The STATE of Ohio, Appellant,

v.

LEWIS, Appellee.■

[Cite as *State v. Lewis* (1998), 125 Ohio App.3d 352.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

Nos. 97CA006687 and 97CA006688.

Decided Jan. 14, 1998.

*Gregory A. White,* Lorain County Prosecuting Attorney, and *Robert F. Corts,* Assistant Prosecuting Attorney, for appellant.

*Kenneth M. Lieux,* for appellee.

*Per Curiam.*

The state of Ohio appeals the judgment of the Lorain County Court of Common Pleas dismissing the criminal charge against appellee, Otis C. Lewis. We reverse and remand.

On September 17, 1996, Lewis was indicted for one count of domestic violence, in violation of R.C. 2919.25(A). On October 16, 1996, Lewis was indicted for one count of domestic violence, in violation of R.C. 2919.25(A), and one count of child endangering, in violation of R.C. 2919.22(A). The charges of domestic violence were based on acts allegedly committed against his wife, Tiffany Lewis. Lewis pleaded not guilty, and the matters proceeded through pretrial and discovery. In December 1996, Lewis moved to dismiss the charges based on the fact that the victim did not want the prosecution to proceed and did not wish to testify. The lower court held a hearing on the motion and subsequently granted dismissal of the domestic-violence charges. The state appeals, pursuant to R.C. 2945.67, citing three assignments of error.

"I. The trial court committed error when, over the objection of the state of Ohio, and without regard to the evidence presented at the hearing, it dismissed two felony counts of domestic violence against the defendant even when the state stood ready to proceed to trial.

"II. The trial court did not give deference to the ability of the state to proceed with or without the victim and the quantity and quality of evidence the state possessed.

"III. The trial court did not properly follow *State v. Busch* and this court should revisit the *Busch* issue."

In dismissing the domestic violence counts against Lewis, the lower court attempted to follow the Ohio Supreme Court's decision in *State v. Busch* (1996), 76 Ohio St.3d 613, 669 N.E.2d 1125, which held that "[a] trial court has the discretion to *sua sponte* dismiss a criminal case over the objection of the prosecution where the complaining witness does not wish for the case to proceed." *Id.* at syllabus. The state's assignments of error on appeal essentially boil down to two arguments: (1) *Busch* is bad law and needs to be revisited, and (2) *Busch* is distinguishable from the case at bar. In terms of the first argument, whether or not we agree with the Supreme Court majority in *Busch,* it is not this court's prerogative to "revisit" that decision, as the state suggests. However, we agree that *Busch* is distinguishable from the case at bar, and it is for this reason that we reverse the lower court's decision and remand for trial on the merits.

The facts in *Busch* are similar to those in the current case in that it, too, involved a domestic dispute. In that case, the victim filed two complaints concerning two incidents of physical abuse at the hands of her boyfriend, Busch. On the first occasion, Busch allegedly struck the victim in the face. On the second, he allegedly dragged her down some stairs and burned her with a cigarette. As a result, Busch was charged with two counts of domestic violence and two counts of assault. Later, however, the victim signed an affidavit stating that she did not wish to proceed with the criminal charges. Thereafter, she testified on three separate occasions, at pretrials before the lower court, that she wished to have the charges dropped.

Ultimately, the lower court in *Busch* dismissed the case. The Franklin County Court of Appeals reversed the dismissal, and the case proceeded to the Ohio Supreme Court, where the decision of the lower court was reinstated. In reaching its conclusion, the Supreme Court majority wrote, "We do not suggest that in every domestic violence case where the victim refuses to testify a trial judge has the unfettered power to dismiss the case." *Id.* at 616, 669 N.E.2d at 1128. It then proceeded to cite five factors that a lower court should consider before granting such a dismissal: (1) the seriousness of the injuries, (2) the presence of independent witnesses, (3) the status of counseling efforts, (4) whether the complainant's refusal to testify is coerced, and (5) whether the defendant is a first-time offender. *Id.* We believe it is on factors two and five that the current case can and should be distinguished from *Busch.*

In *Busch*, it appears that the victim refused to testify against the defendant. It also appears that without her testimony, the state had no other evidence on which to proceed with its prosecution. The Supreme Court evidently found the state's lack of evidence significant as the second of the five factors, the presence of independent witnesses, appears to reflect its intent that the lower court consider the state's ability to proceed in light of the victim's reluctance. When the state's ability to proceed is duly considered under the facts before us, we find that this case quickly distinguishes itself from *Busch.* First, in this case, Mrs. Lewis clearly did not refuse to testify against her husband. In fact, at the hearing, the prosecution asked her if she would testify and testify honestly if subpoenaed to do so, and she indicated that she would. Far beyond this, however, the state presented no less than five independent witnesses who were willing and able to testify to the domestic abuse committed by this defendant against his wife.

First, the state presented the testimony of two police officers who had responded to several domestic dispute calls at the Lewis residence. The first responded to a call received in March 1996. He testified that at that time, Mrs. Lewis appeared very shaken and scared and stated that her husband had struck

her. This officer also responded to a call on August 8, 1996, which was the incident underlying the second indictment. He testified that at that time, Mrs. Lewis stated her husband had "shoved her around and pushed her around and knocked her down to the ground." The second officer stated that he responded to a domestic violence call at the Lewis residence on August 17, 1996. This was the incident underlying the first indictment. This officer testified that on that day, he found Mrs. Lewis "crying, shaking, nervous," and that she told him her husband had "hit her in the back of the head, knocking her to the ground." Then, she told him, Mr. Lewis had "grabbed her by the throat and was threatening to kill her."

Also witness to at least some of the events of August 17, was Mr. Lewis's boss, David Brown. Brown testified that at one point on that day, he had positioned himself between the Lewises to prevent the mounting possibility of physical violence. Although Brown was called as witness for the defense, he indicated on cross-examination that if subpoenaed to testify at trial as to the events he had witnessed that day, he would do so honestly.

In addition, the state presented the testimony of the executive director of the domestic violence shelter in which Mrs. Lewis sought refuge on two separate occasions, and the testimony of Mrs. Lewis's son. The former witness testified that Mrs. Lewis told her on one visit that her husband had burned her. While the latter witness did not personally testify at the hearing on the motion to dismiss, the state indicated that he would testify if the cause proceeded to trial. His testimony would concern the alleged incident of August 8, 1996. Mrs. Lewis testified that on that occasion, her eight-year-old son had felt the need to protect her by running to a neighbor's house to call the police after he witnessed the defendant bring out a belt in the midst of an argument.

In her dissenting opinion in *Busch,* Justice Cook wrote, "Although the majority suggests that the prosecution in this case could not proceed without [the victim's] testimony, we do not know that from the record on appeal." *Id.* at 617–618, 669 N.E.2d at 1129. Quite to the contrary in this case, we think it clear from the record that the state could have proceeded with Mr. Lewis's prosecution, with or without the cooperation or testimony of Mrs. Lewis, and we believe this to be a significant distinction from the facts in *Busch.*

In addition, we believe another distinction can and should be made on the basis of the fifth factor cited by the Supreme Court, whether the defendant is a first-time offender. Here, Lewis's indictment indicates that he was already convicted of one prior offense of domestic violence on September 25, 1992. Clearly, then, Lewis is not a first-time offender.

In setting forth its five minimum considerations for a lower court contemplating *sua sponte* dismissal, the Supreme Court did not indicate that these were the

only factors to consider or that each should be given equal weight. In light of the seriousness of the offense, we believe Lewis's prior conviction alone may be a significant enough distinction to prevent a lower court from dismissing a charge over the state's objection. When coupled with five independent witnesses and the victim's testimony, voluntary or not, we believe that this case represents a substantial departure from the factual scenario presented in *Busch*. Accordingly, we believe that the lower court abused its discretion when it dismissed the charges over the state's objection. We reverse the decision of the lower court and remand for consideration on the merits.

*Judgment reversed*
*and cause remanded.*

SLABY and BAIRD, JJ., concur.

QUILLIN, P.J., dissents.

QUILLIN, Presiding Judge, dissenting.

The majority correctly declines the state's invitation to "revisit" the Ohio Supreme Court's decision in *State v. Busch* (1996), 76 Ohio St.3d 613, 669 N.E.2d 1125. Whether this court agrees or disagrees with the Supreme Court in that case is of no moment. Clearly we do not have the authority to disregard it.

Nevertheless, the majority proceeds to reverse the decision of the lower court based on what it perceives to be important, factual distinctions between this case and *Busch*. However, it is not the duty or privilege of this court to simply substitute its opinion for that of the trial judge. As the *Busch* court noted, "An abuse of discretion implies that the trial court's attitude, as evidenced by its decision, was unreasonable, arbitrary, or unconscionable." *Id.* at 616, 669 N.E.2d at 1128. The standard of review in this case, then, is not whether we like the outcome in the lower court but, rather, whether the lower court abused its discretion in reaching that outcome. I submit that it did not.

The majority bases its reversal on what it perceives to be factual differences between *Busch* and our case. No two domestic violence cases will ever be identical. The majority, understandably but mistakenly, places great emphasis on the belief that the complaining witness in *Busch refused* to testify. While the word *"refuses"* is used in the body of the opinion, nowhere in the factual statement by the court is there anything about the complaining witness refusing to testify. The witness only stated that she did "not wish for the case to proceed." *Id.* at syllabus. This is the language of the syllabus, which is, of course, the law of the case. The opinion of the court of appeals in *Busch* likewise does not say that the complaining witness refused to testify, but only that the

dismissal "was based upon the reluctance of the prosecuting witness to testify." *State v. Busch* (June 30, 1995), Franklin App. Nos. 94APC11–1670 and 94APC11–1671, unreported, 1995 WL 390932. Justice Cook recognized this when she observed in her dissent that "there is no apparent reason why [the victim] could not be compelled to testify." *Busch*, 76 Ohio St.3d at 618, 669 N.E.2d at 1129.

The majority in our case cites the five factors mentioned in *Busch* that a trial judge should consider when determining whether to dismiss a domestic-violence case, over the state's objection, where the complaining witness wishes to have the charges dropped. They single out factors two and five, on which they distinguish this case. There are, however, three additional factors the trial judge was required to consider. The first of these factors is the seriousness of the injuries sustained by the victim. In this case, although there was testimony suggesting some sort of violence had occurred, there was no evidence that the victim had ever sustained serious physical injury. She herself testified that she had not suffered any physical injury on the occasions underlying the two indictments. The officer who responded to the domestic-violence call on August 17, 1996, testified that at that time, he observed no marks or bruises on Mrs. Lewis. Similarly, on August 8, although there was testimony that Mr. Lewis produced a belt on this occasion, the responding officer testified that Mrs. Lewis never indicated he had struck her with it. To the contrary, although the officer observed some bruises on her knees, he testified that he "didn't see any marks on her back or face or neck or anything," and that he "couldn't see anything with the belt marks." The alleged injuries are less serious than those in *Busch*. In that case, the complaining witness testified that the defendant broke her jaw as well as burning her face with a lighted cigarette.

The third factor the lower court was required to consider was the status of counseling efforts. The hearing in this case was conducted on January 27, 1997. Mrs. Lewis testified at that time that she and her husband had been involved in counseling since October 1996. She testified that for approximately four months he had participated in biweekly marital and family counseling sessions. She also testified that Lewis had spent over a month in an inpatient drug-rehabilitation program and that he continued to attend weekly, Monday night sessions in this regard. When asked about the results of these counseling efforts, Mrs. Lewis testified, "He's, well, I know he's not taking drugs any more, his attitude, he's a better husband, he's a better father, and he's actually better than when I married him." Likewise, Mr. Lewis's boss testified:

"[D]uring the time since he's come back [to work] I've seen a 180 degree turn. He attends church regular, he's involved in the church. He attends a Monday night, some type of an a [*sic*] meeting at the Lake Avenue Congregational Church. He goes every Tuesday night to Bible studies at Mount Olivet. * * *

He and his wife are involved in church. The kids have calmed down, the family gets along. It's a 180 degree turn, no problems whatsoever, and everything is going great as far as I can see."

The fourth factor the lower court was required to consider was whether Mrs. Lewis's "refusal to testify" was coerced. *Id.* at 616, 669 N.E.2d at 1128. The first indication in this case that Mrs. Lewis was not coerced is that she did *not* refuse to testify. She stated, in fact, that she *would* testify, but preferred not to. Further, Mrs. Lewis testified that she did not want the charges filed against her husband in the first place. She stated that when she appeared before the grand jury she made it known she wanted the charges dropped. When asked at the hearing on the motion to dismiss, Mrs. Lewis again testified that she wanted the charges dismissed. The *Busch* court found it significant that the lower court in that case did not dismiss the charges until it had "methodically over a period of at least a month determined that [the victim] was not being coerced and truly did not wish to testify." *Id.* In this case, apparently from August 1996 through January 1997, a period of approximately five months, Mrs. Lewis had remained consistent in her desire that her husband not be charged with domestic violence.

In addition and as further evidence she was not coerced, the lower court inquired of Mrs. Lewis at the hearing whether she had discussed with the prosecution and the women's assistance program the possible ramifications of dismissing the charges against her husband. She stated that she had been advised that the abuse might recur in the future. The judge further inquired:

"THE COURT: Has he coerced you or talked to you or threatened you to come here to dismiss these charges?

"THE WITNESS: No.

"THE COURT: Do you have a fear of any repeat of his behavior to you?

"THE WITNESS: I don't, Your Honor."

The Supreme Court in explaining *Busch* told us, "Trial judges are at the front lines of the administration of justice in our judicial system, dealing with the realities and practicalities of managing a caseload and responding to the rights and interests of the prosecution, the accused, and the victims. * * * Trial courts deserve the discretion to be able to craft a solution that works in a given case. Certainly a court's resources in a domestic violence case are better used by encouraging a couple to receive counseling and ultimately issuing a dismissal than by going forward with a trial * * *." *Id.* at 615–616, 669 N.E.2d at 1128. In reversing the court of appeals which in turn had reversed the trial court, the Supreme Court held, "In this case, the trial court used its judicial power to do its best with a matter which no longer seemed to fit the court system. Trial judges have the discretion to determine when the court has ceased to be useful in a given

case. The trial judge made a permissible determination here." *Id.* at 616, 669 N.E.2d at 1128.

I do not believe that this court can justify a reversal here on the basis of abuse of discretion. The trial judge carefully followed the law as set forth in *Busch.* Whether or not we agree with *Busch* or like its application in the current case, I do not believe, based on the facts and testimony outlined above, that we can conclude that the lower court's decision was "unreasonable, arbitrary, or unconscionable." For this reason, I would affirm.